**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VEINTE TRES DOE, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-3587** |

## MEMORANDUM OPINION AND ORDER

Born in Iran and naturalized as a U.S. citizen in 2022, Plaintiff Veinte Tres Doe is a professional actor, singer, playwright, and television and stage host. See ECF No. 1 (Compl.), ¶¶ 9–11. He has been a public critic of the Islamic Republic of Iran for more than a decade and has faced a campaign of punishment, intimidation, and retaliation for his speech. Id., ¶¶ 1–5. Plaintiff Veinte Cuatro Doe — who was naturalized as a citizen of the United States in 2022 — is his wife. Id., ¶ 12. Plaintiff Veinte Cinco Doe was born in the United States and is their 12-year-old son. Id., ¶¶ 13.

In Plaintiffs' telling, Iran's retaliation campaign against them has spanned several years and countries. Back in Iran, Defendants allegedly barred Veinte Tres Doe from employment, interrogated him, detained him, physically abused him, and threatened the lives of his family members, all while demanding that he stop criticizing the Islamic Republic. Id., ¶¶ 3, 44–55. Later, they continued to pursue him and his family in the United States. For example, proxies for the Islamic Republic allegedly published Plaintiffs' phone numbers and residential address online; Iranian authorities confiscated Veinte Tres Doe's assets in Iran; threats against the family "escalated" in the United States; and Veinte Tres Doe was attacked on several occasions in the

United States and Canada. Id., ¶¶ 4, 59–72. Plaintiffs also allege that Defendants seized their family members in Iran and "used them as leverage" to stop Veinte Tres Doe from speaking out, including by summoning and threatening his elderly father, detaining and interrogating his younger brother, publishing his relatives' personal information, refusing to allow his parents to leave Iran, and threatening his family's home and his younger brother's life. Id., ¶¶ 5, 73–80. According to Plaintiffs, such acts were "committed by officials, employees, and agents of Iran and the [Iran Revolutionary Guard Corps]," as well as by "non-state proxies to whom Defendants provided material support and resources." Id., ¶ 6.

Plaintiffs thus sued Iran for damages under the Foreign Sovereign Immunities Act, with Veinte Cinco Doe suing by and through his mother. Id., ¶¶ 1, 7. They now move to proceed pseudonymously. See generally ECF No. 2 (Mot.). The Court will grant their Motion.

## I. Legal Standard

Generally, a complaint must identify the plaintiffs. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). That requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020). As a result, the court must "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure" by

applying a "flexible and fact driven" balancing test. Id. (quoting In re Sealed Case, 931 F.3d at 96). That test assesses "five non-exhaustive factors":

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or, even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and relatedly;
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (cleaned up).

## II. Analysis

Plaintiffs have shown that their interest in pseudonymity outweighs the public's interest in learning their identities.

First, as the Complaint makes clear, Plaintiffs do not seek to proceed under pseudonyms "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature." Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original). Relevant here, privacy can include "maintaining [Plaintiffs'] and their family members' safety." Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023); see also R.A. v. Islamic Republic of Iran, No. 23-2606, ECF No. 4 (Mem. Op. & Order) at 3 (D.D.C. Sept. 12, 2023) (determining that history of "severe violence

and threats . . . at the hands of proxy militia organizations" shows that "Plaintiffs seek to avoid much graver harms than mere annoyance and criticism").

Plaintiffs' aforementioned allegations — including "[t]he publication of the family's personal information, the threats, and the physical attacks . . . carried out by individuals acting on behalf of, at the direction of, or with material support from" Iran's government, see Mot. at 4 — are more than sufficient to tip this first factor in their favor. In particular, their pleadings demonstrate that they have an interest in "preserving privacy to protect" the family's "safety from third-party proxies," who "have a history of attempting to carry out Defendants' aims on American soil," whether at the Iran government's "specific direction" or not. Farshid Do v. Islamic Revolutionary Guard Corps, 2026 WL 980758, at *2 (D.D.C. Apr. 13, 2026); see Mot. at 3–4 (describing Iran's use of proxies and observing that disclosure here would provide them with precisely the kind of "operational" information that they need to target Plaintiffs). The fact that Plaintiffs' address has been published online does not undercut such privacy interests, since "[a]n anonymous internet posting of uncertain reliability is not the same as a sworn federal pleading that confirms the family's identity, links it to this lawsuit, and adds information that the posting did not contain." Mot. at 14. In addition, as Plaintiffs note, the sensitive nature of the information about their mental health and medications — especially the fact that the child has begun wetting the bed at night in fear — lends their request additional support under this factor. See Mot. at 8–9; cf. Employee #1 v. Dep't of Behavioral Health, No. 23-2553, ECF No. 5 (Mem. Op. & Order) at 4 (D.D.C. Sep. 25, 2023) (finding factor favored pseudonymity where complaint "describe[d] in detail how [plaintiff] reacted physically to witnessing" murder, "including with respect to his perspiration, urination, and bowel movements").

The second factor — the risk of retaliatory harm — is closely related to the first and

likewise weighs in favor of pseudonymity. Plaintiffs allege that the conduct described above was carried out in retaliation against Veinte Tres Doe's public criticism of the Iranian government. See Compl., ¶¶ 1–5, 42–44. Such "campaign[s] against dissidents abroad," they note, are well documented. See Mot. at 9 (citing Elahi v. Islamic Republic of Iran, 124 F. Supp. 2d 97, 100–05 (D.D.C. 2000); and Bakhtiar v. Islamic Republic of Iran, 571 F. Supp. 2d 27, 30 (D.D.C. 2008), aff'd, 668 F.3d 773 (D.C. Cir. 2012)). Specific to their case, Plaintiffs allege that "non-defendant prox[ies]," including "operatives in the United States and Canada," continue to pursue them, see Mot. at 9–10, and that "[p]ublic identification" of them and their connection to family members in Iran would raise the risk of future harm to the whole family. Id. at 10. The "risk of retaliatory . . . harm to" Plaintiffs and particularly "to innocent non-parties" thus supports letting them proceed pseudonymously. In re Sealed Case, 971 F.3d at 326 (quotation marks omitted).

The third factor also supports pseudonymity because disclosure of Plaintiffs' names would implicate the privacy interests or safety of a minor, Veinte Cinco Doe. "[F]rightened all the time," the 12-year-old has been "named as a target of 'sudden death' . . . and has been the direct subject of the threats that followed the . . . publication of the family's address." Mot. at 8, 10. Not only would publication of his own name compromise his privacy and safety, but disclosure of his parents' identities could do so, too. See R.A., Mem. Op. & Order at 4 (finding that this factor favored motion "to some extent" where "Plaintiffs indicate that one of them is a minor, and revealing the other Plaintiffs' identities risks undermining the anonymity of that person"); see also J. v. District of Columbia, No. 23-1279, ECF No. 3 (Mem. Op. & Order) at 4 (D.D.C. May 9, 2023) (finding that this factor favored pseudonymity because adult Plaintiffs "share common privacy interests with their minor child due to their intractably linked

relationship") (cleaned up).

Factor four, the identity of the defendants, favors pseudonymity when a plaintiff sues a government for individualized relief. Doe v. Rubio, 2025 WL 3522731, at *2 (D.D.C. Dec. 9, 2025). This suit fits that description. Plaintiffs are suing the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps, see Compl., ¶¶ 14–25 — both governmental entities — as well as officials, employees, agents, and operatives of said governmental entities (Does 1–25), and others acting with the government's support, at its direction, or on its behalf (Does 26–50). Id., ¶¶ 26–27. Furthermore, they seek compensatory, solatium, economic, and punitive damages, id. at 21–22 (prayer for relief), which are forms of individualized relief.

Fifth and finally, letting Plaintiffs proceed pseudonymously will not prejudice Defendants. Plaintiffs plan to file their true identities under seal for *in camera* inspection and have acknowledged that "the Court retains authority to order disclosure if circumstances change." Mot. at 12; see also J.K.A. v. United States, 2023 WL 12248425, at *3 (D.D.C. Aug. 10, 2023) (noting that when plaintiff offers to file identifying information under seal, this factor supports pseudonymity). And to the extent that Defendants already know their identities, such knowledge does not undercut Plaintiffs' request for pseudonymity under this factor. See Mot. at 13; see also Doe v. Fed. Republic of Germany, 680 F. Supp. 3d 1, 6 (D.D.C. 2023) ("Defendants would suffer no risk of unfairness if the Motion were granted, given Plaintiff's claim that they already know Plaintiff's true identity.") (cleaned up). Defendants thus do not face a risk of unfairness. They remain free to request any further information they deem necessary to the full defense of this case or to ask the Court to reconsider this decision.

The Court highlights that this is an initial decision to permit Plaintiffs to proceed pseudonymously. If Defendants appear to defend this suit, the balance of factors might tip the

other way. See Doe I v. Sabeti, 2025 WL 4348642, at *1 (M.D. Fla. Aug. 12, 2025) (reconsidering initial grant to proceed pseudonymously in Torture Victim Protection Act case upon defendant appearance). In any event, Plaintiffs have made an initial showing that their concerns extend beyond Defendants' learning their identities to the risk that third parties could obtain this information and act on Defendants' behalf to harm them. See Mot. at 9–10 (citing Farshid Do, 2026 WL 980758, at *2).

In sum, all the factors weigh in favor of granting Plaintiffs' Motion to Proceed Under Pseudonym. The Court will thus grant the Motion, subject to reconsideration by the District Judge to whom this case is randomly assigned.

The Court accordingly ORDERS that:

1. Plaintiffs' [2] Motion for Leave to Proceed Under Pseudonym is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;
2. All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and
3. Within fourteen days of this Order, Plaintiffs shall file:
   i. A pseudonymous version of their [2] Motion on the public docket; and
   ii. A sealed *ex parte* declaration containing their real names and residential addresses.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 20, 2026